IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**BRIAN JARRAT FOWLER**                                    **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO. 3:16-cv-304 CWR-FKB**

**MCCARTER, CATRON & EAST, PLLC;**
**GILBERT WAYNE MCCARTER, II;**
**JOHN DOE PERSONS A-M; and**
**JOHN DOE ENTITIES N-Z**                                   **DEFENDANTS**

## COMPLAINT
### (JURY TRIAL REQUESTED)

COMES NOW Plaintiff, Brian Jarratt Fowler, by and through counsel, and files this his Complaint against Defendants, McCarter, Catron & East, PLLC; Gilbert Wayne McCarter, II; John Doe Persons A-M; and John Doe Entities N-Z (hereinafter collectively "Defendants"), and support thereof, would show unto the Court the following, to-wit:

### I. PARTIES

1. Plaintiff, Brian Jarrat Fowler (hereinafter "Plaintiff" or "Fowler"), is an adult resident citizen of Rankin County, Brandon, Mississippi.

2. Defendant, McCarter, Catron & East, PLLC (a.k.a. "McCarter Law, PLLC") (hereinafter "MCE" or the "law firm"), is a corporation organized and existing under the laws of the State of Tennessee. McCarter, Catron & East, PLLC, can be served through its registered agent for service of process: Bert W. McCarter, 101 North Maple Street, Murfreesboro, Tennessee 37130. Defendant, during all times relevant, by and through its members, agents and/or attorney's or staff engaged in conduct constituting representation and/or rendering legal advise to the Plaintiff, while Plaintiff was a resident of the State of Mississippi.

3. Defendant, Gilbert Wayne McCarter, II (hereinafter "McCarter"), is an adult

resident citizen of Williamson County, College Grove, Tennessee and resides and may be served at 5017 Native Pony Trail, College Grove, Tennessee 37046. Additionally, Defendant is an attorney practicing law in Rutherford County, Murfreesboro, Tennessee, and may be served at his law firm of McCarter, Catron & East, PLLC located at 101 North Maple Street, Murfreesboro, Tennessee 37130. Further, Defendant engaged in conduct constituting representation and/or the rendering of legal advice to the Plaintiff while Plaintiff was a resident of the State of Mississippi.

4. Defendants, John Doe Persons A-M ("JDP") and John Doe Entities N-Z ("JDE") are individuals and entities presently unknown to Plaintiff at this time and are named in this lawsuit pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. All allegations and claims asserted herein against Defendants are incorporated by reference against JDP and JDE. JDP and JDE will be identified by name and joined in this action, by amendment of the Complaint, pursuant to the Federal Rules of Civil Procedure, when the information to do so becomes available.

## II. JURISDICTION AND VENUE

5. The conduct giving rise to the causes of action alleged herein were partially done in Rankin County, Mississippi and the lawyer-client relationship between Defendants and Plaintiff continued and legal advice continued to be given while Plaintiff was a resident of the State of Mississippi, residing in Rankin County, Mississippi. Plaintiff is a resident of the State of Mississippi and Defendants are non-residents of the State of Mississippi. The amount in controversy exceeds $75,000.00 and there is complete diversity jurisdiction in this case. This honorable Court has jurisdiction over the subject matter and the parties and venue is proper in this Court.

## III. STATEMENT OF FACTS

6. Defendant, Gilbert Wayne McCarter, II, is an owner, member and partner of the law firm McCarter, Catron & East, PLLC, Murfreesboro, Tennessee, also a Defendant in this lawsuit.

8. Plaintiff, contracted with Defendants to represent him with regard to a divorce action against his former wife. Said contract for representation and attorney-client relationship was formed in or around 2012. Defendants undertook the representation of the Plaintiff with Defendant, Gilbert Wayne McCarter, II being the lead attorney and attorney of record.

9. Plaintiff was awarded a Final Decree of Divorce ("Final Decree") from the Circuit Court of Rutherford County, Tennessee on April 24, 2013. At the time the Final Decree of Divorce was entered, Defendants were counsel of record for the Plaintiff, which is evidenced by Defendant, Gilbert Wayne McCarter, II signing the Final Decree of Divorce on behalf of Plaintiff.

10. The Final Decree of Divorce incorporated and adopted as final Orders a Permeant Parenting Plan Order ("Parenting Plan") and Marital Dissolution Agreement ("MDA"). Both the Parenting Plan and MDA were entered by the Circuit Court of Rutherford County, Tennessee on April 24, 2016. At the time that the Parenting Plan and MDA were entered, Defendants were counsel of record for the Plaintiff. Further, Defendants negotiated and/or drafted the Final Decree, Parenting Plan and MDA on behalf of their client, Brian Fowler.

11. At all times relevant, Plaintiff relied on the advice and alleged expertise of the Defendants during the course of his divorce proceeding and in the negotiation of the terms and conditions of the Parenting Plan and MDA.

12. On August 12, 2010, prior to the filing of the Petition for Divorce, Plaintiff and his now ex-spouse filed an action stemming from alleged medical negligence, which rendered the

Plaintiff paralyzed. That lawsuit was filed in the State of Indiana and was pending when Plaintiff was granted a Final Decree of Divorce from his ex-spouse.

13. Defendants were well aware of the fact that the Plaintiff had a pending lawsuit in the State of Indiana, which his now ex-spouse had an interest in by way of a loss of consortium claim, when the terms of the Parenting Plan and MDA were negotiated. Plaintiff relied on the judgment, skill and alleged expertise of the Defendants in order to protect his interest in any proceeds recovered from the pending Indiana Lawsuit. Plaintiff and Defendants had many discussions about the pending lawsuit and how to handle the proceeds from the suit in the MDA. Plaintiff was assured by Defendants that his ex-spouse had essentially no claim to the lawsuit proceeds as her loss of consortium claim was basically worthless. It was specifically represented to Plaintiff by Defendants that his ex-spouses claim to the medical malpractice award would be limited to what she could prove in a court of law that her damages were for loss of consortium and that since she filed a counter-claim for divorce alleging that the marriage was bad from the beginning, that her claim to the medical malpractice action proceeds had no value.

14. Defendants were also well aware of the potential overall value of the pending Indiana lawsuit when the MDA was negotiated and signed. Defendants were informed both by the Plaintiff as well as by Plaintiff's personal injury counsel in Indiana that the overall claim was likely worth the statutory limit (per Indiana Medical Malpractice caps), which was $1,250,000.00.

15. Armed with all relevant knowledge as alleged herein, Defendants negotiated and advised the Plaintiff to sign the MDA which addressed the disposition of the proceeds of the Indiana medical malpractice action as follows:

> "The personal injury case proceeds will be divided according to Indiana law or the agreement reached by the parties in the event of settlement or based upon the jury verdict, should there be a trial. The court costs for the same shall be divided in accordance with Indiana law on a pro rata share of the proceeds or by agreement." (See MDA at Paragraph 5).

16. The potential proceeds from the Indiana medical malpractice action were significantly more than the value of the entire marital estate.

17. Defendants incorporated language into the MDA specifically stating that Indiana law would control the disposition of the medical malpractice lawsuit proceeds when neither Gilbert Wayne McCarter, II nor any member of his law firm were licensed in the State of Indiana. Therefore, Defendants were advising Plaintiff with regard to the law of a jurisdiction were they were not licensed to practice law.

18. Defendants represented to the Plaintiff that Indiana law was chosen because loss of consortium claims in Indiana were basically worthless and that it would be in his best interest if Indiana law were applied, even though Defendants did not hold a license to practice law in the State of Indiana.

19. If Defendants would have researched Indiana law they would have realized that a contingent asset, such as a pending personal injury suit does not even have to be in the MDA since Indiana law holds that a contingent asset is incapable of division. However, by including it in the MDA, Defendants specifically converted this contingent asset into marital property to be divided by Indiana law with regard to division of marital property. It was a breach of the applicable standard of care to include an asset that Defendants had full knowledge of its likely value in the amount of $1,250,000.00 in a MDA when it was not even required. Even if same were required to be included in the MDA, it was below the applicable standard of care to subject this asset to division per the laws of a jurisdiction Defendants were not licensed to practice law in.

20. In August 2014 a settlement was reached with the Defendants in the Indiana medical malpractice action for the total amount of $250,000.00. Per Indiana statute the remainder

of compensation had to come from the Indiana Patient's Compensation Fund, which caps the available damages in medical malpractice actions at $1,000,000.00. A settlement was reached with the Indiana Patient's Compensation Fund in December 2014 for payment of the statutory maximum amount of $1,000,000.00. After subtracting attorneys' fees and expenses, the remainder of the Indiana lawsuit proceeds available for distribution was $711,780.00.

21. Plaintiff began negotiations with his ex-spouse with regard to settlement of each parties' respective claim to the lawsuit proceeds minus fees and costs. However, those negotiations were unsuccessful as Plaintiff's ex-spouse was advised that due to the language in the MDA that she had a legitimate claim for one-half of the net proceeds of the medical malpractice lawsuit settlement.

22. Plaintiff was shocked to learn for the first time that his ex-spouse had a potentially legitimate claim to one-half of the proceeds from a lawsuit that was filed due to medical negligence that rendered him paralyzed.

23. Plaintiff had to retain legal counsel in Mississippi to represent his interests with regard to the lawsuit proceeds.

24. In order to have some funds while the remainder of the issues were attempted to be worked out, Plaintiff and his ex-spouse entered into two partial distribution agreements whereby Plaintiff received a total of $165,250.00 and his ex-spouse received a total of $50,250.00. The partial distribution agreements contained very specific language providing that neither party was admitting that the other was entitled to any specific percentage of the overall funds and that in the event that a court of law were to determine that either party had already received more than there legal share then the amount of any overpayment would be reimbursed. Plaintiff was forced to enter into these partial distribution agreements in order to have some money from the lawsuit

proceeds, which was desperately needed in order to purchase a new handicapped equipped van as well as to make handicapped modifications to his residence. After the two partial distributions were made the total left for distribution to the parties was $496,280.00.

25. On February 9, 2015, the remaining funds from the Indiana lawsuit were interplead into the registry of the Chancery Court of Rankin County, Mississippi due to the parties not being able to come to an agreement as to how to divide the proceeds. Plaintiff's ex-spouse was adamant and took the legal position that due to the language in the MDA that she was entitled to one-half of the lawsuit proceeds.

26. On April 8, 2015, Plaintiff's ex-spouse, by and through Mississippi counsel, filed a Motion for Summary Judgment in the Chancery Court of Rankin County, Mississippi seeking a judicial determination that she was entitled to one-half of the proceeds of the Indiana medical malpractice lawsuit settlement as a matter of law. Her argument was that Indiana law required that the lawsuit proceeds by divided on a 50/50 basis since by including them in the MDA made the proceeds marital property. She also argued that the issue was *res judicata* since the Final Decree of Divorce, which incorporated the MDA had already been decided and entered.

27. The matter was mediated in July 2015 and due to the legitimate threat of Plaintiff's ex-spouse being awarded one-half of the overall lawsuit proceeds, Plaintiff was forced to settle with his ex-spouse. According to the settlement agreement that was reached at mediation, Plaintiff's ex-spouse received $137,000.00 of the interplead funds. Therefore, due to the professional negligence of the Defendants, including but not limited to, including the inclusion of the contingent lawsuit in the MDA, Plaintiff was forced to agree that his ex-spouse would receive a total of $187,500.00 from the overall settlement funds minus fees and costs.

28. Due to the negligence, breach of contract, breach of fiduciary duty and breach of

the applicable standard of care by the Defendants as described herein and to be more fully developed in discovery and shown at trial, Plaintiff has been damaged in an amount of at least $187,000.00, plus all attorneys' fees paid to the Defendants in representing him in his divorce, plus all attorneys' fees incurred by the Plaintiff since the professional negligence on the part of the Defendants was discovered, the costs of mediation, lost interest and lost profits as well as all attorneys' fees and costs associated with the brining of this action.

## COUNTS AND CAUSES OF ACTION

29. Plaintiff hereby incorporates all allegations in the previous paragraphs as if fully set forth herein.

30. Defendants failed to properly investigate the facts of the divorce matter for the Plaintiff during their representation of the Plaintiff, failed to properly work up the case, failed to properly advise and counsel the Plaintiff with regard to his divorce and the Marital Dissolution Agreement, negligently failed to investigate the laws of the State of Indiana before including language in the MDA regarding division of the lawsuit proceeds pursuant to Indiana law, negligently included the contingent lawsuit in the MDA when it did not have to be included, negligently misrepresented to the Plaintiff that his ex-spouse would receive virtually nothing from the Indiana lawsuit proceeds, negligently caused the Plaintiff a lengthy delay in getting paid proceeds from the Indiana personal injury settlement and breached their duty to perform legal services for the Plaintiff which constitutes a breach of their contract for employment with the Plaintiff as well as a breach of their professional duty to represent the Plaintiff to a level commensurate with the applicable standard of care for like legal professionals.

31. The negligence and/or breach of contract and/or breach of fiduciary duty of the Defendants caused the damages herein consisting of at least one or a combination of the following:

(a) Breach of fiduciary duties in the handling of Plaintiff's divorce action;

(b) Breach of contract in the handling of Plaintiff's divorce action;

(c) Negligently failing to properly advise the Plaintiff with regard to the Indiana lawsuit proceeds;

(d) Negligently including language in the MDA which directed that Indiana law would be applied when Defendants were not licensed in Indiana;

(e) Negligently failing to have a licensed Indiana lawyer explain the meaning of the provision in the MDA regarding the lawsuit proceeds;

(f) Negligently including a contingent asset that was incapable of division at the time that the MDA was executed;

(g) Negligently failing to adequately protect Plaintiff's interests in the lawsuit proceeds;

(h) Negligently and fraudulently misrepresenting to Plaintiff that his ex-spouse had very little claim to the lawsuit proceeds if the case were to be settled and that the language included in the MDA would ensure that Plaintiff's ex-spouse had very little claim, if any, to the lawsuit proceeds;

(i) Negligently and/or fraudulently misrepresenting to the Plaintiff that his ex-spouse would only be entitled to what she could prove in a court of law with regard to the value of her loss of consortium claim;

(j) Negligently failing to compute the total value of the property division that the ex-spouse was to receive;

(k) Breach of professional rules of conduct;

(l) Engaged in conduct, acts and omissions which fell below the applicable

professional standards of care;

32. Each of such acts and/or omissions and/or breaches of contract were a proximate cause of the damages suffered by Plaintiff.

## **PRAYER**

33. WHEREFORE, PREMISES CONSIDERED, Plaintiff, Brian Fowler brings this action and demands judgment of and from Defendants, jointly and severally, in a sum which exceeds the minimum jurisdictional limits of this court, plus all costs in the cause accruing, pre-judgment interest, post-judgment interest, attorneys' fees and actual and punitive damages.

Plaintiff demands general relief.

RESPECTFULLY SUBMITTED, this the 25th day of April, 2016.

BRIAN JARRETT FOWLER

By: _____
MICHAEL C. MOORE, MSB#99989

MICHAEL C. MOORE
BARLOW & MOORE, PLLC
229 KATHERINE DRIVE
FLOWOOD, MS 39232
601-988-0000 (PHONE)
601-988-0001 (FAX)
michael@barlowmoore-law.com