IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN JARRAT FOWLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-02835** |
| | ) | **Judge Aleta A. Trauger** |
| **McCARTER, CATRON & EAST, PLLC;** | ) | |
| **GILBERT WAYNE McCARTER, II;** | ) | |
| **JOHN DOE PERSONS A–M; and** | ) | |
| **JOHN DOE ENTITIES N–Z,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss (Doc. No. 27) filed by defendants McCarter,

Catron & East, PLLC ("McCarter law firm") and Gilbert Wayne McCarter ("McCarter")

(collectively, "defendants"). In his Response to the Motion to Dismiss (Doc. No. 44), the

plaintiff requests that the defendants' Rule 12(b)(6) motion be converted into a Rule 56 motion,

that he be permitted to conduct discovery, and that the court stay consideration of the defendants'

motion pending such discovery. As set forth herein, the plaintiff's requests will be denied, and

the defendants' motion will be granted on the grounds that the plaintiff's claims against these

defendants are barred by the statute of limitations.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In the First Amended Complaint (Doc. No. 3), plaintiff Brian Fowler alleges generally

that the McCarter law firm is based in Murfreesboro, Tennessee and that Gilbert McCarter is an

attorney practicing law in Murfreesboro, Tennessee at the McCarter law firm. (*Id.* ¶¶ 2–3.)

Fowler contracted with the defendants to represent him in a divorce action against his former

wife in 2012. (*Id.* ¶ 8.) McCarter was lead attorney and attorney of record. (*Id.*) A Final Decree of Divorce ("Divorce Decree") was entered by the Circuit Court of Rutherford County, Tennessee on April 24, 2013. (*Id.* ¶ 9.) The Divorce Decree adopted and incorporated by reference a Permanent Parenting Plan Order ("Parenting Plan") and Marital Dissolution Agreement ("MDA"). (*Id.* ¶ 10.)

During the divorce proceedings and at the time the Divorce Decree was entered, Fowler and his then-wife and minor children lived in Murfreesboro, Tennessee. McCarter knew, and the Parenting Plan reflected, that Fowler's ex-wife intended to relocate to Mississippi shortly after the divorce became final and that Fowler might also eventually move to Mississippi. (*Id.* ¶ 5; *see also* MDA ¶ 6, Doc. No. 19-1; Parenting Plan at 1, Doc. No. 19-13.) Both parties, in fact, moved to Mississippi at some point after their divorce became final.

In August 2012, prior to the filing of the Petition for Divorce, Fowler and his then-wife filed a legal action in Indiana against a third party ("Indiana lawsuit"), alleging that the medical negligence of the defendant in that action had rendered the plaintiff paralyzed. (Am. Compl., Doc. No. 3 ¶ 12.) The Indiana lawsuit was still pending when the Divorce Decree was entered in Tennessee in 2013. The plaintiff alleges generally that McCarter engaged in legal malpractice when he advised the plaintiff concerning how to handle the eventual proceeds ("Settlement Proceeds") from the Indiana lawsuit in the divorce action. He alleges that he relied on McCarter to protect his interest in any potential Settlement Proceeds. (*Id.* ¶ 13.) According to Fowler, McCarter "specifically represented to Plaintiff that his ex-spouse's claim to the Settlement Proceeds would be limited only to the loss of consortium damages she could prove in a court of law." (*Id.*) McCarter allegedly assured the plaintiff that his ex-wife's loss of consortium claim was worth "little or no money" and, therefore, that she would have "essentially no claim" to the Settlement Proceeds. (*Id.*) McCarter was also aware at the time the MDA was negotiated and

signed that the Indiana lawsuit was likely worth the Indiana statutory limit of $1.25 million, considerably more than the value of the remainder of the marital property. (*Id.* ¶ 14.)

Based on McCarter's advice, Fowler signed the MDA. The MDA provided that the Settlement Proceeds would be "divided according to Indiana law or the agreement reached by the parties in the event of settlement or based upon the jury verdict, should there be a trial" and that court costs would also "be divided in accordance with Indiana law on a pro rata share of the proceeds or by agreement." (*Id.* ¶ 15 (citing MDA ¶ 5).) Fowler alleges that McCarter included language in the MDA stating that Indiana law would control the disposition of the Settlement Proceeds and represented to him that it would be in Fowler's best interest if Indiana law were applied, even though McCarter was not licensed in Indiana, did not consult with an attorney licensed to practice law in Indiana, and did not research what effect such language would have on the plaintiff's rights to, and interest, in the Settlement Proceeds. (*Id.* ¶¶ 17–19.)

Fowler alleges that, if McCarter had researched Indiana law, he would have learned that potential proceeds from a pending personal injury lawsuit, as a contingent asset, did not need to be included in the MDA. However, because the MDA incorporated reference to the Settlement Proceeds, it converted the contingent asset into marital property to be divided pursuant to Indiana law governing the division of marital property. (*Id.* ¶ 19.) Because the asset was included in the MDA, Fowler's ex-wife had a colorable claim to 50% of the Settlement Proceeds, rather than the nominal amount Fowler expected based on McCarter's advice. Fowler alleges that McCarter breached the applicable standard of care by including the proceeds from the pending lawsuit, worth approximately $1.25 million, in the MDA, when such inclusion was not legally required. (*Id.*)

The Indiana lawsuit was settled in August 2014 for $1.25 million. After subtracting attorneys' fees and expenses, the Settlement Proceeds available for distribution totaled $711,780.

(*Id.* ¶ 20.) Fowler's efforts to reach an agreement with his ex-wife as to the share of the Settlement Proceeds due to her were unsuccessful, because the ex-wife "was advised that, due to the language in the MDA, she had a legitimate claim for one-half of the net proceeds . . . pursuant to Indiana law." (*Id.* ¶ 21.) Fowler claims that he was "shocked to learn for the first time that his ex-wife had a potentially legitimate claim to one-half of the proceeds" from the Indiana lawsuit. (*Id.* ¶ 22.) "Prior to this time, Plaintiff had no knowledge of the negligence and misconduct of Defendants and had no reason to know of the negligence and misconduct of Defendants." (*Id.*)

Allegedly as a result of McCarter's negligence, Fowler was "forced" to retain legal counsel in Mississippi, where he was living by that time, to represent his interests in the division of the Settlement Proceeds. (*Id.* ¶ 23.) Fowler does not specifically allege in his Amended Complaint when his ex-wife filed suit, but she apparently did file suit in the Chancery Court of Rankin County, Mississippi ("Mississippi lawsuit") in early 2015, seeking a declaration that she was entitled to 50% of the Settlement Proceeds.[1] In the course of the Mississippi lawsuit, the Settlement Proceeds were interpleaded into the registry of the Rankin County Chancery Court on February 9, 2015. (*Id.* ¶ 25.) On April 8, 2015, Fowler's ex-wife filed a Motion for Summary Judgment in the Mississippi lawsuit, seeking a judicial determination that she was entitled to one-half of the Settlement Proceeds. "Her argument was that Indiana law required that the lawsuit proceeds b[e] divided on a 50/50 basis, since the proceeds were converted into a marital asset by their inclusion in the MDA." (*Id.* ¶ 26.)

---

[1] It is apparent from the allegations in the Amended Complaint regarding the interpleading of the funds and the ex-wife's filing of a Motion for Summary Judgment that the Mississippi lawsuit had been filed. The court therefore has no need to take into consideration the January 22, 2015 Complaint for Declaratory Judgment, Injunctive Relief and for an Accounting (Doc. No. 46-11) submitted by the plaintiff.

"[D]ue to the legitimate threat of Plaintiff's ex-spouse being awarded one-half of the overall lawsuit proceeds," Fowler was allegedly "forced" to settle the dispute with his ex-wife at a mediation that took place in July 2015. (*Id.* ¶ 27.) In the settlement, he agreed that his ex-wife would receive $187,500 of the total $711,780. (*Id.* ¶ 27.)

The plaintiff filed his original Complaint (Doc. No. 1) in this action on April 25, 2016, in the United States District Court for the Southern District of Mississippi. Rather than answering, the defendants filed a Motion to Dismiss and supporting Memorandum (Doc. Nos. 11 & 12), asserting that the Mississippi court lacked jurisdiction over them and, in the alternative, that the case had been filed in the wrong venue. In the Order ruling on that motion (Doc. No. 22), the Mississippi court rejected the plaintiff's argument that the case was properly heard in the Southern District of Mississippi and transferred the action to the Middle District of Tennessee as the appropriate venue on November 3, 2016, without addressing the question of jurisdiction.

Now pending is the defendants' second Motion to Dismiss, asserting a defense based on the statute of limitations. Along with his Response in Opposition to the Motion to Dismiss, the plaintiff has submitted numerous documents (most of which were also previously submitted with his response to the first Motion to Dismiss), including a lengthy Affidavit detailing the communications between Fowler and various McCarter law firm employees after the plaintiff had moved to Mississippi; copies of emails between the plaintiff and McCarter law firm employees exchanged after Fowler had moved to Mississippi; the MDA; the Parenting Plan; the January 22, 2015 Complaint for Declaratory Judgment, Injunctive Relief and for an Accounting filed by Fowler's ex-wife in the Mississippi lawsuit, seeking a determination of her rights regarding the distribution of the Settlement Proceeds and demanding 50% of such proceeds under Indiana law; and the ex-wife's Motion for Summary Judgment in the Mississippi lawsuit. Fowler argues that the Motion to Dismiss should be converted into one for summary judgment

under Rule 56 of the Federal Rules of Civil Procedure. He also asks for permission to take discovery and that the defendants' motion be stayed pending discovery. The defendants filed a Reply, arguing that the only matters outside the pleading on which they rely are documents incorporated by reference into the Amended Complaint that may be considered without converting their motion into a summary judgment motion.

## II.    STANDARD OF REVIEW

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (citations omitted), *reh'g denied* (Sept. 23, 2016). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* (citation omitted).

In ruling on the motion in this case, the court need consider only the allegations in the Amended Complaint and those documents filed by the plaintiff that are expressly referenced in the Amended Complaint and integral to the plaintiff's claims, including the Divorce Decree, the MDA, the Parenting Plan, and the Motion for Summary Judgment filed by the plaintiff's ex-wife in the Mississippi action. The court therefore denies the plaintiff's request to convert the defendants' Rule 12(b)(6) motion into a Rule 56 motion.

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the ""facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## III.   DISCUSSION

The defendants argue that the plaintiff's Amended Complaint should be dismissed because the plaintiff's legal malpractice claims are barred by Tennessee's one-year statute of limitations governing such claims, Tenn. Code Ann. § 28-3-104(c)(1). Fowler, besides arguing that the motion should be converted into a Rule 56 motion, insists that he needs discovery in order to properly respond to the defendants' allegations concerning (1) when he knew or should have known that the defendants committed legal malpractice; (2) when he suffered a cognizable injury as a result of the defendants' malpractice; (3) when he knew or should have known he suffered a cognizable injury as a result of the defendants' malpractice; (4) whether the defendants fraudulently concealed his cause of action by the communications surrounding the relevant provisions of the MDA; and (5) whether Mississippi has a more significant relationship to the facts than Tennessee such that Mississippi's statute of limitations pertaining to legal malpractice actions should apply. (Doc. No. 44, at 13–14.) Fowler asserts that documents

relevant to these issues are solely in the defendants' possession. He moves under Rule 56(d) for discovery concerning these and other matters, and he asks the court to stay its ruling on the Motion to Dismiss until after the parties have conducted discovery related to the statute of limitations.

In the alternative, Fowler argues that (1) pursuant to Tennessee choice-of-law rules, Mississippi substantive law applies to this case, as Mississippi has the most significant relationship to the issues in this litigation; (2) his claims are not barred by the Mississippi statute of limitations; (3) even if Tennessee law applies, his cause of action is not barred because it did not accrue until June 2015, when he was forced to settle the Mississippi lawsuit with a final payment to his ex-wife from the remaining undistributed Settlement Proceeds; and (4) the defendants fraudulently concealed the cause of action by continuing to assure Fowler that his ex-wife's claim was without merit, even after she had filed the Mississippi lawsuit, thus tolling the statute of limitations. The court considers each of these arguments in turn.

## A.     The Request for Discovery and to Stay Consideration of the Motion

Rule 56(d) of the Federal Rules of Civil Procedure, formerly Rule 56(f), establishes the procedure to be followed when a party argues that additional discovery is necessary to "justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). The court has already determined that it will not convert the defendant's motion into a motion for summary judgment and will not consider any documents filed by the parties except those expressly incorporated by reference into the Amended Complaint. This decision effectively moots the plaintiff's request for discovery under Rule 56(d).

Even if that were not the case, discovery and a stay would be unnecessary. Although the plaintiff asserts that documents supporting his opposition to the Motion to Dismiss are in the defendants' possession, the documents he identifies—including records of communications

between the parties, law firm billing records, internal law firm memoranda and notes, and the defendants' research concerning the division of the Settlement Proceeds—are not relevant to the questions posed by the defendants' motion. More specifically, the documents have no bearing on the areas of inquiry the plaintiff himself has identified, which primarily concern what the *plaintiff* knew and when. That information is not in the defendants' possession.

The plaintiff's request to conduct discovery and to stay consideration of the Motion to Dismiss pending discovery will therefore be denied.

### B.     Application of Tennessee's Choice-of-Law Rules

This is a diversity action alleging state-law claims of legal malpractice. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The first step in the choice-of-law analysis is to ascertain whether there is a material difference between the laws of the relevant states. *See Lemons v. Cloer*, 26 S.W.3d 60, 64–65 (Tenn. Ct. App. 2006) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992)). Clearly, there is. As discussed below, Tennessee's statute of limitations governing legal malpractice claims is one year from the date the cause of action accrues, Tenn. Code Ann. § 28-3-104(c)(1), while Mississippi's is three years. *See Bradley v. Jordan*, 182 So. 3d 439, 440 (Miss. 2016) ("The three-year statute of limitations found in Mississippi Code Section 15-1-49 applies to actions for legal malpractice.").

In *Hataway*, the Tennessee Supreme Court rejected the *lex loci delicti* doctrine, which it had followed until then, and adopted instead the approach espoused by the Restatement (Second) of Conflicts of Laws for resolving choice-of-law conflicts. 830 S.W.2d at 59. Under *lex loci delicti*, the substantive rights of an injured party are governed by the law of the state in which the injury occurred. *Id.* at 55. Under the Restatement's approach, "a court applies the 'law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state

has a more significant relationship . . . to the occurrence and the parties.'" *Hataway*, 830 S.W.2d at 57 (quoting Restatement (Second), §§ 146 and 175).

In considering the relative significance of the relevant states' relationships with the events at issue, courts are to consider:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

*Id.* at 59 (quoting Restatement (Second) ¶ 145). The contacts "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

In the Order transferring the case to this court as the appropriate venue, the Southern District of Mississippi found as follows:

> In this case, the Southern District of Mississippi is not home to a substantial part of the events or omissions giving rise to Fowler's claim. The event which gave rise to the claim was McCarter's advice to include the Indiana personal injury case in the divorce agreement. That advice was given in Tennessee, in a Tennessee divorce action, by a Tennessee lawyer, and to a Tennessee resident. The Final Decree of Divorce was filed on April 24, 2013. That Fowler later suffered an adverse economic effect from that advice in Mississippi is not enough, because otherwise venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished in the general venue statute [in] 1990.

(Doc. No. 22, at 5 (internal quotation marks, citations, and footnotes omitted).) While that decision addressed venue rather than a choice of law, the holding is instructive here. Although the economic injury occurred in Mississippi—because that is where Fowler and his ex-wife now live and where they litigated the distribution of the Settlement Proceeds—the other factors weigh in favor of Tennessee. As the Mississippi district court observed, the giving of erroneous legal advice allegedly caused the injury at issue in this lawsuit. "That advice was given in Tennessee,

in a Tennessee divorce action, by a Tennessee lawyer, and to a Tennessee resident." (*Id.*) That is, the conduct that caused the injury occurred in Tennessee. McCarter is domiciled in Tennessee, his place of business is in Tennessee, and he provided the allegedly erroneous legal advice to Fowler in Tennessee when Fowler was domiciled here. Accordingly, the parties' relationship is centered in Tennessee. Although Fowler alleges that numerous emails and communications concerning the Settlement Proceeds were exchanged by the parties after he moved to Mississippi, the issue presented by his lawsuit is whether the defendants committed legal malpractice in advising Fowler about his divorce, before Fowler moved away from Tennessee. The court finds, under the specific circumstances presented here, that Tennessee has a more significant relationship with the occurrence and the parties and, therefore, that Tennessee's substantive law applies.

## C.    Application of Tennessee's Statute of Limitations

In Tennessee, "[a]ctions against . . . attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action is grounded or based in contract or tort." Tenn. Code Ann. § 28-3-104(c)(1). This lawsuit was filed on April 25, 2016. The question posed here is whether the cause of action accrued prior to April 25, 2015.

Tennessee courts apply the discovery rule to determine when a cause of action accrues. Under this rule, a cause of action accrues "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citations omitted). In other words, the plaintiff must have suffered "legally cognizable damage—an actual injury," and he "must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *Id.* (citation omitted).

As the Tennessee Supreme Court has explained:

An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer some actual inconvenience, such as incurring an expense, as a result of the defendant's negligent or wrongful act. . . . However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.

The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date— whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Id.* at 532–33 (internal quotation marks and citations omitted).

Fowler argues that "the earliest date upon which [he] could have suffered an injury or known of the relationship between Defendants' negligence and the injury was June 10, 2015, the date of the mediation" of the Mississippi lawsuit. (Doc. No. 44, at 21.) On that date, he claims, he suffered a cognizable injury when he was "forced to pay his former wife a substantial sum out of his personal injury proceeds." (*Id.* at 18.) He acknowledges that his ex-wife began arguing prior to that date that she was entitled to 50% of the Settlement Proceeds, but he insists that "arguments do not amount to injury." (*Id.*)

Tennessee caselaw does not support the plaintiff's position. Notably, in *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995), the plaintiffs' legal malpractice cause of action was held to have accrued when the plaintiffs were sued for breach of warranty based on a "wrongly prepared deed," *id.* at 29, and not when the action on the deed was concluded against the plaintiffs. The court held that the fact that the plaintiffs had been told by three different attorneys that the breach of warranty suit had no merit was not relevant in light of the fact that the lawsuit itself put the plaintiffs on notice that the deed might have been incorrectly prepared:

> [T]he [plaintiffs] should have "known" that they had been injured as a result of [the attorney's] negligence when they were sued in February 1986. At that time they knew the suit pertained to the "wrongly prepared deed," they knew that [the attorney] had prepared the deed, and they were clearly aware that there was at least a possibility that they would incur liability because of [the attorney's] actions.

*Id.* at 29. The court therefore rejected the plaintiffs' argument that they had not incurred an actual injury until judgment was awarded against them in trial court and that judgment was affirmed on appeal. *Id.* at 29–30.

More recently, the plaintiff in a legal malpractice action argued that the limitations period did not accrue until the Tennessee Court of Appeals reversed the trial court judgment and held that the contract the plaintiff sought to enforce in an underlying action was unenforceable as contrary to Tennessee law. *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 540 (Tenn. Ct. App. 2012). In that case, the defendant attorney had represented the plaintiff in drafting a contract with a third party. The third party later sued the plaintiff, seeking a declaration that the contract was illegal and therefore unenforceable under Tennessee law. The plaintiff counterclaimed for breach of contract. The third party eventually moved for summary judgment on the issue of the enforceability of the contract. The trial court denied the motion, and the plaintiff later prevailed at a jury trial on its breach of contract claim. The Tennessee Court of

Appeals, however, reversed on the basis that the contract was illegal. Within a year of entry of the appellate judgment, the plaintiff brought a legal malpractice action against the attorney who had drafted the illegal contract.

The Tennessee Court of Appeals held that the action was barred by the statute of limitations. More specifically, it concluded that "the time and expense of defending Cookeville's motion for summary judgment . . . constituted an actual injury for purposes of the discovery rule. . . . [D]amage need not be the entry of an order adverse to the client, but may consist of the 'plaintiff being forced to take some action or otherwise suffer "some actual inconvenience" . . . as a result of the defendant's negligent or wrongful act.'" *Id.* at 543 (quoting *John Kohl & Co.*, 977 S.W.2d at 532–33). The court concluded that the plaintiff was put "on notice that [it] had sustained an injury as a result of [the attorney's] alleged negligence" as soon as the third party filed its motion for summary judgment that specifically alleged that the contract was illegal. *Id.* at 545.

In the case at bar, Fowler specifically alleges in the Amended Complaint that he was "forced" to retain legal counsel to defend against his ex-wife's claim to 50% of the Settlement Proceeds. (Am. Compl. ¶ 23, Doc. No. 3.) Although the Amended Complaint itself does not indicate the precise date on which his ex-wife filed the Mississippi lawsuit or when Fowler was required to retain counsel, these events necessarily occurred before April 8, 2015, the date on which his ex-wife filed her Motion for Summary Judgment in the Mississippi lawsuit, "seeking a judicial determination that she was entitled to one-half of the [Settlement Proceeds]." (*Id.* ¶ 26.) Her argument in that motion was that "Indiana law required that the lawsuit proceeds b[e] divided on a 50/50 basis, since the proceeds were converted into a marital asset by their inclusion in the MDA." (*Id.*)

The court finds, for purposes of the discovery rule, that the plaintiff's cause of action

accrued no later than the date his ex-wife filed her summary judgment motion in the Mississippi lawsuit. That document unambiguously put Fowler on notice that he had a legal claim against the defendants in this action based on the inclusion of the Settlement Proceeds from the Indiana lawsuit in the MDA. In addition, he also suffered a legally cognizable injury no later than that date, in the form of the actual inconvenience and expense of retaining a lawyer to respond to the Motion for Summary Judgment.

The ex-wife's summary judgment motion was filed on April 8, 2015, more than a year before this lawsuit was filed on April 25, 2016. The plaintiff's suit is therefore barred by the statute of limitations unless the limitations period is tolled based on equitable considerations.

### D. Fraudulent Concealment

The plaintiff insists that the statute of limitations is tolled by the doctrine of fraudulent concealment. Under that doctrine as applied in Tennessee, "the statute of limitations is tolled when the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012) (citation and quotation marks omitted). A plaintiff invoking the fraudulent concealment doctrine must allege and prove:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462–63 (citations and quotation marks omitted). However, mere "reliance on erroneous legal advice" cannot operate to toll the statute of limitations, because "the discovery rule relating to injury only applies to matters of *fact* unknown to a prospective plaintiff, not to matters of

*law*." *Hartman v. Rogers*, 174 S.W.3d 170, 173 (Tenn. Ct. App. 2005) (emphasis added).

In this case, the plaintiff alleges in support of his fraudulent concealment argument that, as soon as his ex-wife first raised an argument that she was entitled to more than a nominal portion of the Settlement Proceeds, he communicated her demands to the defendants. The defendants, however, repeatedly represented to him that the ex-wife's claim was without merit. (*See* Doc. No. 44, at 23 ("Defendant McCarter fraudulently concealed the cause of action from Plaintiff by his reassuring statements regarding the intent and effect of the language in divorce documents.").) In other words, the defendants' alleged concealment consists of assurances regarding the legal merits of the ex-wife's claims; the plaintiff does not contend that the defendants concealed material *facts*.

The facts as alleged by the plaintiff establish that the fraudulent concealment doctrine does not apply. The statute of limitations was not tolled, and his claims are barred by the statute of limitations.

### E. John Doe Defendants

The Motion to Dismiss was filed by the named defendants only—the McCarter Law Firm and Gilbert Wayne McCarter, II. In the Amended Complaint, the plaintiff also names as defendants John Doe Persons A–M and John Doe Entities N–Z. Although this action has been pending for over ten months, the plaintiff has made no effort to identify or serve the John Doe defendants.

Moreover, in the Amended Complaint, the plaintiff does not identify any actions specifically taken by John Doe Persons A-M or John Doe Entities N-Z. He alleges only that "John Doe Persons A-M ("JDP") and John Doe Entities N-Z ("JDE") are individuals and entities presently unknown to Plaintiff at this time and are named in this lawsuit pursuant to Rule 9(h) [sic] of the

Federal Rules of Civil Procedure.[2] All allegations and claims asserted herein against Defendants are incorporated by reference against JDP and JDE." (Am. Compl. ¶ 4.) Thereafter, the plaintiff alleges only that he contracted with the "Defendants" to represent him in his divorce and that "Defendants" undertook such representation," with "Defendant Gilbert Wayne McCarter, II, being the lead attorney and attorney of record." (Am. Compl. ¶ 8.) He alleges "Defendants were counsel of record" at all relevant times and that he relied on the "advice and alleged expertise of the Defendants during the course of his divorce proceedings." (Am. Compl. ¶¶ 10, 11.)

In other words, the Amended Complaint does not allege facts or assert claims other than those directed at individuals associated with the McCarter Law Firm who were involved in providing legal advice to Fowler during the course of his divorce. Accordingly, all such claims are barred by the statute of limitations to the same extent the claims against the named defendants are barred and are likewise subject to dismissal.

## IV. Conclusion

For the reasons set forth herein, the defendants' Motion to Dismiss (Doc. No. 27) will be granted. The plaintiff's requests to convert the defendants' Rule 12(b)(6) motion into a Rule 56 motion, to conduct discovery, and to stay consideration of the defendants' motion pending such discovery will be denied. The court will also dismiss the claims against the unnamed John Doe defendants as barred by the statute of limitations. An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] Because Rule 9(h) concerns the pleading of an admiralty or maritime claim, the court presumes the plaintiff intended to reference Rule 15(c)(1)(C).